**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Daniel Morse

    v.                                    Civil No. 15-cv-382-LM
                                            Opinion No. 2016 DNH 095
Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Daniel Morse moves to reverse the Acting Commissioner's decision to deny his application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings consistent with this order.

**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of
social security disability benefits unless 'the [Acting
Commissioner] has committed a legal or factual error in
evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS,
76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v.
Hudson, 490 U.S. 877, 885 (1989)).

     As for the statutory requirement that the Acting
Commissioner's findings of fact be supported by substantial
evidence, "[t]he substantial evidence test applies not only to
findings of basic evidentiary facts, but also to inferences and
conclusions drawn from such facts."  Alexandrou v. Sullivan, 764
F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,
360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial
evidence is 'more than [a] mere scintilla.  It means such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d
594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the
[Acting Commissioner] to determine issues of credibility and to
draw inferences from the record evidence.  Indeed, the
resolution of conflicts in the evidence is for the [Acting
Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS,
955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations

omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[ ] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts.  That statement, document no. 12, is part of the court's record and will be summarized here, rather than repeated in full.

Morse was born in 1980 and graduated from high school in 2000.  While in high school, he attended special education classes and was assigned a classroom aide.

In November 1998, Morse took the Wechsler Adult Intelligence test (WAIS-R).  His results indicated a verbal intelligence quotient ("IQ") of 77, a performance IQ of 64, and a full-scale IQ of 70.

After graduating from high school, Morse worked as a retail clerk and as a cleaner.  Since March of 2011, he has worked part

3

time for D&J Professional Image ("D&J") doing general cleaning.
All of Morse's jobs have been arranged by the New Hampshire
Bureau of Vocational Rehabilitation ("NHVR").  The record
includes a letter, dated February 25, 2014, from Cynthia
Capodestria, who is a vocational counselor at NHVR.  According
to Capodestria:

> [Morse's] current case opened a year ago.  Our work
> with Daniel over the last 14 years leads us to
> conclude that he is working to his full potential in a
> highly supported work environment . . . .  His current
> employer [D&J] offers special training and
> accommodations for Daniel's physical work capacity and
> cognitive abilities.

Administrative Transcript (hereinafter "Tr.") 261.  The record
also includes a letter from D&J's Jason Thibodeau, who noted
that he has "given Dan a great deal of leeway," Tr. 180, and
also described various limitations in Morse's ability to work.[1]
Like Capodestria, Thibodeau stated that Morse was working to his
maximum potential.

    In May of 2013, Dr. Edward Martin, a state-agency
consultant who did not examine Morse, performed a psychiatric

---

[1] These include difficulties with changes in routine,
difficulties with time management, a need for very specific
instructions, and difficulties with remembering and/or following
instructions.

review technique ("PRT")[2] based upon an analysis of the record.
Dr. Martin concluded that Morse's mental impairments did not
meet the Social Security Administration's criteria for either
organic mental disorders (Listing 12.02) or anxiety disorders
(Listing 12.06).  Dr. Martin did not consider the SSA's criteria
for intellectual disability (Listing 12.05).[3]

In January of 2014, Morse took another intelligence test,
the WAIS-IV.  This testing was undertaken as part of a
psychological evaluation performed by Dr. Michael Mills, on
referral from NHVR.  After stating that Morse's test "results
are considered a reliable and valid assessment of his current
functioning," Tr. 276, Dr. Mills reported a full-scale IQ of 59
and scores of 72 in verbal comprehension, 56 in perceptual
reasoning, 71 in working memory, 62 in processing speed, and 60
in general ability.  Based upon his examination of Morse and a
battery of testing, Dr. Mills gave the following relevant
diagnosis: "Extremely low intellectual functioning IQ = 59
(previously labeled Mild Mental Retardation)."  Tr. 283.  Dr.

---

[2] The Social Security Administration uses the "psychiatric
review technique" to evaluate the severity of mental
impairments.  See 20 C.F.R. § 404.1520a (describing the PRT).

[3] The "listings" referred to above, and discussed in more
detail in the next section, are drawn from a Social Security
regulation titled "Appendix 1 to Subpart P of [29 C.F.R.] Part
404 – Listings of Impairments."

Mills concluded his Psychological Report with a series of recommendations, including a list of more then 50 accommodations that would benefit Morse either in training or on the job.[4]

After the SSA denied Morse's claim for benefits, he received a hearing before an Administrative Law Judge ("ALJ"). The ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 2.  The claimant engaged in substantial gainful activity during the following periods June 1, 2007 through December 31, 2008 and from July 1st 2011 through June 30, 2012 (20 CFR 404.1520(b) and 404.1571 <u>et seq.</u>).
>
> . . . .
>
> 3.  However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity.  The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

---

[4] Here is a representative sample of the accommodations on Dr. Mills's list:

> Provide pictures, symbols, or diagrams in addition to words.  . . .  Post diagrams and to-do lists using short phrases.  Post written or pictorial instructions on frequently-used machines, but remind him to look at these.  . . .  Use pre-counted or pre-measured materials, e.g., mark a measuring cup with a "fill to here" line.  . . .  Avoid re-organization of workspace.  . . .  Avoid isolated workstations but also avoid crowds.  . . .  Communicate one-to-one.

Tr. 284-85.  Dr. Mills explained that his list did not include all of the accommodations from which Morse might benefit, and suggested that Morse should be provided with some of them, where reasonable.

. . . .

4.  The claimant has the following severe impairments: borderline intellectual functioning, anxiety and a speech impediment (20 CFR 404.1520(c)).

. . . .

5.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

Tr. 18, 19, 20.  After determining that Morse did not have an impairment that met or equaled the severity of a listed impairment, the ALJ determined Morse's residual functional capacity ("RFC").[5]

### III. Discussion

#### A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for those benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(E).  The only question in this case is whether Morse was under a disability from June 1, 2007, through July 25, 2014.

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an

---

[5] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

ALJ is required to employ a five-step process.  See 20 C.F.R.

§ 404.1520.

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920, which outlines the same five-step process as

the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Acting
> Commissioner] considers objective and subjective
> factors, including: (1) objective medical facts; (2)
> [claimant]'s subjective claims of pain and disability
> as supported by the testimony of the claimant or other
> witness; and (3) the [claimant]'s educational
> background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Morse's Claims

Morse claims that the ALJ erred in three ways: (1) by determining, at step one, that his employment from June 1, 2007, through December 31, 2008, and from July 1, 2011, through June 30, 2012, qualified as substantial gainful activity; (2) by determining, at step three, that his mental impairments did not meet or equal the severity of a listed impairment; and (3) by formulating an RFC that is not supported by substantial evidence.  Morse's second argument is persuasive, and dispositive; the ALJ erred in her determination that Morse's mental impairment does not meet the listing for intellectual disability.  In the discussion that follows, the court begins with the ALJ's step-three determination and then takes up claimant's claim of error at step one.

1. Step Three

The applicable SSA regulations define intellectual disability in the following way:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence

demonstrates or supports onset of the impairment
before age 22.

        The required level of severity for this disorder
is met when the requirements in A, B, C, or D are
satisfied.

. . . .

        B. A valid verbal, performance, or full scale IQ
of 59 or less;

OR

        C. A valid verbal, performance, or full scale IQ
of 60 through 70 and a physical or other mental
impairment imposing an additional and significant
work-related limitation of function.

29 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.  The

introductory paragraph of Listing 12.05 is sometimes referred to

as the "capsule definition."  See Libby v. Astrue, No. 2:10-cv-

292-JAW, 2011 WL 2940738, at *7 (D. Me. July 19, 2011), R. & R.

adopted by 2011 WL 3715087 (Aug. 24, 2011).

        Morse bears the burden of proving that his mental

impairment meets the criteria of Listing 12.05.  See Bowen, 482

U.S. at 146; Seavey, 276 F.3d at 5.  He claims that the ALJ

erred by determining that his mental impairment does not meet

the criteria for either Listing 12.05B or Listing 12.05C, but

for reasons that will become apparent, the court focusses on

Listing 12.05C.  As Judge O'Toole has recently explained:

        In order to satisfy Listing 12.05(C), a claimant must
        show that [he] (1) experiences "significantly
        subaverage general intellectual functioning with

10

deficits in adaptive functioning [that] initially
manifested during the developmental period; i.e., the
evidence demonstrates or supports onset of the
impairment before age 22;" (2) that [he] has a valid
verbal, performance, or full scale IQ of 60 through
70; and (3) that [he] suffers from a "physical or
other mental impairment imposing an additional and
significant work-related limitation of function."

Santiago v. Colvin, Civ. No. 15-10236-GAO, 2016 WL 1275031, at
*7 (D. Mass. Mar. 31, 2016) (citation omitted).  The first prong
of the test outlined by Judge O'Toole springs from the capsule
definition in the introductory paragraph of Listing 12.05.[6]

In her decision, the ALJ explained her 12.05C determination
this way:

[T]he "paragraph C" criteria of listing 12.05 are not
met because the claimant does not have a valid verbal,
performance, or full scale IQ of 60 through 70 and a
physical or other mental impairment imposing an
additional and significant work-related limitation of
function.  While the evidence of record documents a
valid Full Scale IQ score of 70, the evidence also
establishes significant adaptive functioning, which is
inconsistent with a finding of disability.  While the
combination of the claimant's impairments leads to a
reduction of his functional abilities, the evidence of
record does not support a finding that these
additional limitations are of the degree necessary to
preclude work activity.

Tr. 22.

_____

[6] In light of Santiago and, more importantly, Libby v.
Astrue, 473 F. App'x 8, 9 (1st Cir. 2012), the court must reject
claimant's arguments that the capsule definition is not a formal
prong of the Listing 12.05C test and that his high-school IQ
scores are sufficient to satisfy that prong of the test.

Clearly, the ALJ determined that Morse had satisfied the second prong of the 12.05C test, a valid full-scale IQ of 60 through 70.  And in her memorandum of law, the Acting Commissioner concedes that Morse has satisfied the third prong, i.e., an additional impairment that imposes a significant work-related limitation of function.  See doc. no. 11-1, at 7 n.2. Thus, the ALJ's step-three determination cannot be affirmed unless she made a finding, supported by substantial evidence, that Morse had not satisfied the first prong of the 12.05C test. The problem is that the ALJ does not appear to have considered the first prong at all.

The ALJ's decision contains separate paragraphs devoted to the severity requirements for Listings 12.05A, 12.05B, and 12.05C, and seven paragraphs devoted to the severity requirements for Listing 12.05D.  But nowhere does the decision directly address the requirements stated in the capsule definition, i.e., the first prong of the 12.05C test.

There is some language in the ALJ's discussion of the severity requirements for Listing 12.05C that echoes the adaptive deficits requirement of the capsule definition, but if that language was included in an effort to address the capsule definition – which seems unlikely given the structure and format of the ALJ's discussion of step three – any such effort fails.

The second sentence in the paragraph the ALJ devoted to Listing 12.05C says that "the evidence also establishes significant adaptive functioning, which is inconsistent with a finding of disability." Tr. 22. However, the presence of adaptive functioning in some areas does not establish a lack of deficits in others, and all a claimant has to show to satisfy the capsule definition is adaptive deficits.  See Richardson v. Soc. Security Admin. Comm'r, No. 1:10-cv-00313-JAW, 2011 WL 3273140, at *9 (D. Me. July 29, 2011) (criticizing ALJ's adaptive deficits analysis for being "limited to reciting what [the claimant] can do, without discussing evidence on the other side of the ledger"), R. & R. adopted by 2011 WL 3664357 (Aug. 18, 2011).  In other words, for the purposes of applying the capsule definition, the presence of even significant adaptive functioning is not necessarily inconsistent with a finding of adaptive deficits, which is all that is required to support a finding of disability, provided that the severity requirements, i.e., the second and third prongs of the 12.05C test, have been satisfied.

In the third sentence of the paragraph devoted to Listing 12.05C, the ALJ stated that "[w]hile the combination of the claimant's impairments leads to a reduction of his functional abilities, the evidence of record does not support a finding

that these additional limitations are of the degree necessary to perform work activity." Tr. 22. As a preliminary matter, the ALJ's reference to the combination of claimant's impairments suggests that this sentence is directed to the second severity requirement (prong three) rather than the adaptive deficits requirement (prong one). But even if that statement was intended to support a finding on the first prong of the 12.05C test, it is well established that the adaptive deficits requirement "does not require <u>significant</u> deficits in adaptive functioning; it only requires that there be deficits in adaptive functioning initially manifested during the developmental period." Lightfoot v. Colvin, Civ. No. 13-11264-JGD, 2014 WL 4926391, at *10 (D. Mass. Sept. 30, 2014) (quoting Black v. Astrue, 678 F. Supp. 2d 1250, 1260 (N.D. Fla. 2010)) (emphasis in the original, internal quotation marks and other citations omitted); see also Richardson, 2011 WL 3273140, at *8. If anything, the ALJ's finding that Morse's impairments reduced his functional abilities would seem to satisfy the first prong of the 12.05C test, not negate it.

The bottom line is this. Given that the second and third prongs of the 12.05C test have been satisfied, the ALJ could not have determined that Morse was not disabled, at step three, without determining that he had not satisfied the first prong of

the test.  But, it is not clear whether the ALJ undertook that part of the analysis in the first instance, and if she did, it is not clear how she performed it.  That is grounds for a remand.  See Lightfoot, 2014 WL 4926391, at *10 ("Because it is impossible to determine whether and to what extent the ALJ considered the first element of Listing 12.05(C), this court finds that a remand is required."); see also Alves v. Colvin, C.A. No. 14-229 S, 2015 WL 6809823, at *2 (D.R.I. Nov. 5, 2015) (remanding, where it was "not clear from the ALJ's decision whether he considered the threshold question of whether or not Plaintiff has shown 'deficits in adaptive functioning initially manifested during the developmental period'").

While the court is remanding for a proper consideration of the adaptive deficit requirement, there is another issue that may need to be addressed on remand.  Specifically, when Dr. Martin performed his PRT, he considered Listings 12.02 and 12.06, but did not determine whether Morse's impairment met the criteria for Listing 12.05.  Under similar circumstances, the court in Richardson remanded, with instructions for referral "to a consulting expert for performance of the PRT prior to the [ALJ's] independent assessment of listing 12.05(C) [because] [t]he Commissioner's regulations ordinarily require the assistance of an expert consultant."  2011 WL 3273140, at *8.

Here, too, it may well be necessary to obtain the assistance of
an expert consultant.

Morse also claims that the ALJ erred by determining that
his mental impairment does not satisfy the criteria for Listing
12.05B.  The ALJ's decision on that issue was based upon her
determination that Morse's 2014 IQ test scores were not valid.
The lack of any expert support for that finding may be
problematic.  See Bard v. Astrue, No. 1:10-cv-220-JAW, 2011 WL
2559534, at *4 (D. Me. June 27, 2011) (affirming ALJ's finding
that IQ test results were invalid when "[t]hat finding . . . was
supported by every expert opinion of record, including the
opinion of Dr. Gates, who derived the score on which the
plaintiff relies"), R. & R. adopted by 2011 WL 2791082 (July 15,
2011).  While the ALJ's finding in Bard was supported by expert
opinions, Dr. Mills stated, in an opinion to which the ALJ gave
great weight, that the results of the IQ test he administered in
2014 were "considered a reliable and valid assessment of
[Morse's] current functioning."  Tr. 276.  But the court need
not rule on the correctness of the ALJ's determination regarding
Listing 12.05B, because resolution of the adaptive deficits
question will be dispositive of step three.  If that requirement
is met, then claimant satisfies the criteria of Listing 12.05C,
but if that requirement is not met, then claimant cannot satisfy

the criteria for either Listing 12.05B or Listing 12.05C.  Thus, the court need not decide whether the ALJ correctly determined that Morse's 2014 IQ test results are invalid.

### 2. Step One

At step one of the sequential analysis, the ALJ determined that Morse had engaged in substantial gainful activity ("SGA") during two different time periods: June 1, 2007, through December 31, 2008, and July 1, 2011, through June 30, 2012. Consequently, she eliminated those two periods from her subsequent analysis.  The ALJ's step-one determination should be revisited on remand.

The ALJ truncated Morse's potential period of disability by examining his earnings records and measuring his earnings against the thresholds for substantial gainful activity established in 20 C.F.R. § 404.1574.  While § 404.1574 sets earnings thresholds for SGA, § 404.1573(c) provides that if a claimant works "under special conditions, [the SSA] may find that it does not show that [he has] the ability to do substantial gainful activity."  With regard to the conditions under which Morse worked, the ALJ stated that "there is no evidence that the claimant was unable to satisfactorily perform his job or that the claimant received any special accommodations."  Tr. 19 (emphasis added).

With respect to the first period the ALJ eliminated, the
court finds no fault with the ALJ's decision.  While the record
establishes Morse's earnings during that time period, and that
he worked as a cleaner at Steeplegate Mall, he has identified no
evidence about the conditions under which he worked that would
support a finding that his job at the mall was not SGA.  The
second time period, however, is a different story.  From July 1,
2011, through June 30, 2012, Morse worked for D&J.  Both Morse's
supervisor at D&J and a rehabilitation counselor at NHVR, which
got Morse his job with D&J, have stated that Morse works under
special conditions at D&J.[7]  While it is for the ALJ to determine
how to evaluate those statements, see Irlanda Ortiz, 955 F.2d at
769, the court cannot agree that the record does not include any
evidence that Morse has received special accommodations during
his employment at D&J.  Accordingly, the ALJ's conclusion to the
contrary is not supported by substantial evidence, and this
issue should be reexamined on remand.

### IV. Conclusion

For the reasons given, the Acting Commissioner's motion for
an order affirming her decision, document no. 11, is denied, and

---

[7] Relatedly, the Psychological Report by Dr. Mills, to which
the ALJ gave great weight, identified dozens of special
conditions from which Morse would benefit in a work setting and
recommended that he be provided with some of them.

Morse's motion to reverse that decision, document no. 9, is
granted to the extent that the case is remanded to the Acting
Commissioner for further proceedings, pursuant to sentence four
of 42 U.S.C. § 405(g).  The clerk of the court shall enter
judgment in accordance with this order and close the case.

      SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 6, 2016

cc:  Laurie Smith Young, Esq.
     Terry L. Ollila, Esq.